# 24-1726-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

AMTAX HOLDINGS 227, LLC,

*Plaintiff-Appellant,*

– v. –

COHNREZNICK LLP,

*Defendant-Appellee,*

TENANTS' DEVELOPMENT CORPORATION,

*Intervenor-Defendant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

MELISSA A. PENA
BENJAMIN D. SCHWARTZ
NORRIS MCLAUGHLIN, P.A.
*Attorneys for Defendant-Appellee*
7 Times Square, 21st Floor
New York, New York 10036
(212) 808-0700

CP COUNSEL PRESS    (800) 4-APPEAL • (333083)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee, CohnReznick LLP ("Appellee" or "CohnReznick") states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ........................................................ 1

    JURISDICTION OF THE SECOND CIRCUIT COURT
    OF APPEALS ........................................................................... 1

    JURISDICTION OF THE DISTRICT COURT ................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 2

STATEMENT OF RELATED CASES ..................................................... 3

STATEMENT OF THE CASE ............................................................. 5

    I.    The District Court Correctly Dismissed Appellant's Claims
        for Lack of Subject Matter Jurisdiction ................................. 8

    II.    Background on the LIHTC Program and Section 42 of
        the Code ........................................................................ 10

    III.    The Structure of the Partnership ........................................ 11

    IV.    CohnReznick Did Not Consistently Perform the ROFR
        Calculation in a Manner Beneficial to AMTAX and Then
        Enter into a "Secret Agreement" with the Partnership to
        Perform the Calculation to Harm AMTAX ......................... 13

    V.    TDC's Exercise of the ROFR and the ROFR Calculation ................. 18

    VI.    The Related Massachusetts Actions ................................... 19

        A.    The Massachusetts State Court Litigation ................. 21

SUMMARY OF THE ARGUMENT ..................................................... 23

ARGUMENT ............................................................................... 27

    I.    STANDARD OF REVIEW ................................................. 27

    II.    THE DISTRICT COURT CORRECTLY APPLIED THE
        *GRABLE-GUNN* TEST TO FIND SUBJECT MATTER
        JURISDICTION DOES NOT EXIST IN THIS CASE ................. 27

A.    The District Court Properly Found that the First Circuit's Application of the *Grable-Gunn* Test is Instructive ...............................................................28

B.    The District Court Properly Applied the *Grable-Gunn* Test to Find No Federal Jurisdiction.........................................31

    1.    The District Court Properly Found that the First Element of the *Grable-Gunn* Test is Not Satisfied ...................................................32

        i.    A Federal Issue is Not Necessarily Raised by AMTAX's Claims Against CohnReznick ........................................32

        ii.    This Court Should Affirm the District Court's Dismissal Order For the Additional Reason that AMTAX's Claims Can Be Determined Solely by Looking to State Law.............................................37

    2.    The District Court's Ruling that the Interpretation of Section 42(i)(7) is "Actually Disputed" is Not Inconsistent with the Remainder of the Court's Analysis ..........................................................39

    3.    The District Court Correctly Found that the Federal Question is Not Substantial ..............................40

        i.    The Federal Issue Is Not a "Pure Issue of Law"......................................................42

        ii.    AMTAX Has Not Established That Resolution of the Federal Question Would Have Far Reaching Implications for the LIHTC Industry....................................45

    4.    The Exercise of Jurisdiction Would Interfere With Congress' Judgment Regarding The Division of Labor Between Federal and State Courts.............................................................47

CONCLUSION .......................................................................51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*7 W. 21 LI LLC v. Mosseri,*
2022 WL 16722105 (S.D.N.Y. Nov. 4, 2022) .......................................34

*AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.,*
15 F.4th 551 (1st Cir. 2021).......................................................... *passim*

*Arbaugh v. Y&H Corp.,*
546 U.S. 500 (2006) ............................................................... 29, 35

*Aurecchione v. Schoolman Transp. Sys.,*
426 F.3d 635 (2d Cir. 2005)...........................................................27

*Bell v. New York State Bd. of Regents,*
26 A.D.3d 538 (2006) ..................................................................49

*Buday v. New York Yankees P'ship,*
486 F. App'x 894 (2d Cir. 2012)......................................................38

*Bullmore v. Ernst & Young Cayman Islands,*
45 A.D.3d 461 (2007) ..................................................................38

*Carter v. HealthPort Techs., LLC,*
822 F.3d 47 (2d Cir. 2016).......................................................... 27, 35

*Caterpillar Inc. v. Williams,*
482 U.S. 386 (1987) ....................................................................27

*Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.,*
557 F. App'x 87 (2d Cir. 2014).........................................................41

*Dagostine v. Pendleton,*
No. 2:22-CV-00220, 2022 WL 16950281 (S.D.W. Va. Nov. 15, 2022)........ 47-48

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC,*
631 F.3d 42 (2d Cir. 2011)..............................................................39

*Empire Healthchoice Assur., Inc. v. McVeigh,*
547 U.S. 677 (2006) ................................................................ 28, 41

iii

*Fischer v. Fischer,*
　　No. 20-cv-2173, 2021 WL 1720213 (N.D. Tex. Apr. 30, 2021) .........................48

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.,*
　　545 U.S. 308 (2005) ...................................................................... *passim*

*Gunn v. Minton,*
　　568 U.S. 251 (2013) ...................................................................... *passim*

*Lewis v. Lewis,*
　　189 P.3d 1134 (Colo. 2008) ...............................................................39

*Link Motion Inc. v. DLA Piper LLP (US),*
　　103 F.4th 905 (2d Cir. 2024)...............................................................41

*Makarova v. United States,*
　　201 F.3d 110 (2d Cir. 2000)................................................................27

*Miller v. Brightstar Asia, Ltd.,*
　　43 F.4th 112 (2d Cir. 2022)................................................................27

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC,*
　　770 F.3d 1010 (2d Cir. 2014)......................................................... 28, 42

*New York by James v. Sirius XM Radio Inc.,*
　　No. 24-CV-413 (JSR), 2024 WL 2348206 (S.D.N.Y. May 23, 2024).................51

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.,*
　　824 F.3d 308 (2d Cir. 2016)............................................................ *passim*

*Ossining Union Free School Dist. v. Anderson LaRocca Anderson,*
　　73 N.Y.2d 417 (1989) .....................................................................38

*Peel v. Att'y Registration & Disciplinary Comm'n of Illinois,*
　　496 U.S. 91, 110 S. Ct. 2281 (1990) ......................................................49

*Rhode, Titchenal, Bauman & Scripter v. Shattuck,*
　　619 P.2d 507 (Colo. App. 1980) ..........................................................38

*Riseboro Community Inc. v. SunAmerica Housing Fund No. 682,*
　　401 F. Supp. 3d 367 (E.D.N.Y. 2019)................................................. *passim*

*Rivera-Zayas v. Our Lady of Consolation Geriatric Care Ctr.,*
　　No. 21-2164-CV, 2023 WL 2926286 (2d Cir. Apr. 13, 2023)............................28

*Sharkey v. Quarantillo,*
  541 F.3d 75 (2d Cir. 2008) ...................................................................35

*Sheridan v. New Vista, L.L.C.,*
  406 F. Supp. 2d 789 (W.D. Mich. 2005) .............................................48

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,*
  33 F. Supp. 3d 401 (S.D.N.Y. 2014) ....................................................39

*State ex rel. Am. Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.,*
  592 F. Supp. 3d 183 (S.D.N.Y. 2022) ..................................................44

*SunAmerica Housing Fund 1500 v. Pathway of Pontiac, Inc.,*
  33 F.4th 872 (6th Cir. 2022) ................................................................33

*Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.,*
  No. 23-1213, 2024 WL 4096360 (2d Cir. Sept. 6, 2024) ....................... 41, 42, 43

*Tantaros v. Fox News Network, LLC,*
  12 F.4th 135 (2d Cir. 2021) ............................................................. 32, 41

*Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC,*
  No. 20 Civ. 10902 (LTS), NO. 20 Civ. 10911 (LTS), 2020 WL 7646934
  (D. Mass. Dec. 23, 2020), *aff'd on other grounds sub nom.*
  *AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.,* 15 F. 4th 551
  (1st Cir. 2021) ................................................................ 3, 19, 20, 29

*Thyroff v. Nationwide Mut. Ins. Co.,*
  460 F.3d 400 (2d Cir. 2006) .................................................................38

*Ultramares Corporation v. Touche,*
  255 N.Y. 170 (1931) .............................................................................38

*United States v. Mellon,*
  719 F. App'x 74 (2d Cir. 2018) ............................................................43

*Verlinden B.V. v. Cent. Bank of Nigeria,*
  461 U.S. 480 (1983) .............................................................................32

*Wisehart v. Zions Bancorporation,*
  49 P.3d 1200 (Colo. App. 2002) ..........................................................39

*Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi,*
  215 F.3d 247 (2d Cir. 2000) .................................................................35

**Statutes and Other Authorities:**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................... 1, 27, 44

28 U.S.C. § 1332 ...................................................................................1

28 U.S.C. § 1340 ...................................................................... 1, 43, 44, 50

CPLR Article 78 .................................................................................49

Fed. R. Civ. P. 12(b)(1) ....................................................................8, 27

Fed. R. Civ. P. 12(b)(6) ........................................................................8

Internal Revenue Code § 42 ............................................................. *passim*

Internal Revenue Code § 42(i)(7) ..................................................... *passim*

*Investors Mine for Profits in Affordable Housing, Leaving Thousands of Tenants at Risk* (April 29, 2021) ...........................................................13

U.S. Dep't of Hous. and Urb. Dev., <u>What Happens to Low-Income Housing Tax Credit Properties at Year 15 and Beyond?</u> ...................................46

## JURISDICTIONAL STATEMENT

## JURISDICTION OF THE SECOND CIRCUIT COURT OF APPEALS

This Court has jurisdiction to address the appeal as the Order on appeal is a final order that is immediately appealable as of right pursuant to 28 U.S.C. § 1291.

## JURISDICTION OF THE DISTRICT COURT

The District Court does not have subject matter jurisdiction over this action as there has been no showing of diversity jurisdiction under 28 U.S.C. § 1332. Further, as correctly held by the District Court, the action does not give rise to federal question jurisdiction under 28 U.S.C. §§ 1331 or 1340 given Appellant's failure to assert any claims under the Constitution, laws, or treaties of the United States, including, but not limited to, Section 42(i)(7) of the Internal Revenue Code (the "Code"). Specifically, the District Court correctly determined that the action does not fall within the narrow category of cases where federal courts have jurisdiction over state law claims as contemplated by the test the Supreme Court set forth in *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) and *Gunn v. Minton*, 568 U.S. 251 (2013) (the "*Grable-Gunn* test").

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the District Court committed clear error when it found that Appellant failed to meet its burden to establish federal question jurisdiction under the *Grable-Gunn* test under which the Court correctly determined that it lacked jurisdiction to consider Appellant's state law claims which arise from Appellee's calculation of a right of first refusal price set forth in a right of first refusal agreement between two private parties and where no federal activity is implicated, which holding is consistent with prior decisions by the District Court of Massachusetts and the United States Court of Appeals for the First Circuit, who considered the same right of first refusal agreement and same jurisdictional arguments at issue here.

## STATEMENT OF RELATED CASES

This case has not been before this Court, but Appellant is and was involved in the following related lawsuits that arise from or relate to the claims giving rise to this appeal:

- *Tenants' Dev. Corp.*, v. *AMTAX Holdings 227, LLC*, No. 20 Civ. 10902 (LTS) (D. Mass. May 12, 2020). Involved the same right of first refusal agreement and calculation at issue here and was dismissed after plaintiff conceded there was no diversity jurisdiction.

- *AMTAX Holdings 227, LLC v. Tenants' Dev. Corp.*, No. 20 Civ. 10911 (D. Mass. May 12, 2020). Involved the same right of first refusal agreement and calculation at issue here and was dismissed for the same lack of subject matter jurisdiction issues presented in the case at bar, as AMTAX could not meet its burden under the *Grable-Gunn* test.

- *AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.*, 15 F.4th 551 (1st Cir. 2021). Affirmed the Massachusetts District Court's determination that the federal court lacked subject matter jurisdiction (on the same arguments as presented in the case at bar) involving the same right of first refusal agreement and calculation at issue here as AMTAX could not meet its burden under the *Grable-Gunn* test.

- *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC,* CA No. 2084CV01260-BLS1 (Mass. Super. Ct. 2020). State court action where AMTAX was forced to bring its claims concerning the right of first refusal agreement and calculation at issue here after the federal courts found that it lacked subject matter jurisdiction over the claims.

- *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC,* SJC-13564 (MA. Supreme Judicial Court). Appeal of state court findings concerning the right of first refusal calculation at issue here.

- *AMTAX Holdings 227, LLC v. CohnReznick, LLP,* No. 24 CV 32652 (Colo. Dist. Ct. Aug. 30, 2024). Tacitly acknowledging the District Court does not have jurisdiction over AMTAX's state law claims raised in the case at bar, on August 30, 2024, AMTAX filed a complaint in the state court of Colorado alleging identical allegations against CohnReznick as it did in the lower District Court from which this appeal originates.

## STATEMENT OF THE CASE

AMTAX Holdings, 227, LLC ("Appellant" or "AMTAX") improperly filed this accounting malpractice action against CohnReznick, who Appellant admits is the accountant for Tenants' Development II, L.P. (the "Partnership") (Appx21, Compl. ¶ 49.)[1]  The Partnership was formed to develop and own a low-income housing project in Boston, Massachusetts (the "Property") (Appx14 – Compl. ¶ 20). The Partnership is a party to a Right of First Refusal Agreement ("ROR Agreement") whereby it granted Tenants' Development Corporation ("TDC") a right of first refusal to acquire the Property. (*See generally* Appx93-110 – ROR Agreement.) The Partnership – *not AMTAX* - requested that CohnReznick calculate the ROFR price to be paid by TDC. (Appx112-118.)

The method by which the ROFR price must be calculated is detailed in the ROR Agreement (the private contract between TDC and the Partnership) and CohnReznick performed the calculation in accordance with the contract.  (*See generally* Appx93-110 – ROR Agreement.)

Unsatisfied with the outcome of the ROFR calculation, AMTAX, the investor limited partner in the Partnership, contends (incorrectly) that CohnReznick should have calculated the ROFR calculation consistent with how CohnReznick performed certain previous "exit tax" calculations, which calculations (not surprisingly) would

---

[1] Citations to "Appx" are to the Joint Appendix submitted by AMTAX and citations to "Compl." are to AMTAX's complaint filed with the District Court (Appx9-62).

result in AMTAX receiving millions of dollars. (Appx23 – Compl. ¶ 60.) The problem is that the prior calculations were "exit tax" calculations, not ROFR calculations. They are two different calculations taking different issues into consideration, as required by the terms of the ROR Agreement. (Appx53-62 – Compl., Ex. 3; Appx131.)

More specifically, CohnReznick performed the "exit tax" calculations at the request of the Partnership to determine the amount AMTAX would receive if the general partner Tenants' Development II Corporation (the "General Partner") acquired the Partnership's limited interest in the Partnership. The "exit tax" calculation addresses a sale of the *limited partner's interest in the Partnership*. Conversely, the ROFR calculation considers *a sale of the Property*. AMTAX's attempt to use these calculations interchangeably is wrong, as evidenced by the very document attached to AMTAX's Complaint whereby the General Partner annexed the "exit tax" calculation to an offer to buy AMTAX's *limited partnership interest*. (Appx43-47 – Compl., Ex. 1.)

Essentially, what AMTAX cannot obtain through the ROR Agreement terms themselves, it seeks to force through this and the various other related Court proceedings (as detailed above). And if AMTAX cannot obtain the relief in the other various pending actions, it seeks to recover such amounts from CohnReznick by claiming malpractice by CohnReznick, even though CohnReznick did not provide

services to AMTAX, has no privity with AMTAX and owes no duty to AMTAX in connection with the project.

In addition to manufacturing claims against CohnReznick, AMTAX also seeks to manufacture federal question jurisdiction. AMTAX cannot establish that its claims arise under Section 42(i)(7) of the Code as this statutory provision does not create a private cause of action for AMTAX. Ignoring the fact that the ROFR calculation is a product of express contractual terms, AMTAX contends that the Court will have to analyze Section 42(i)(7) of the Code to adjudicate its state law claims.

This same argument by AMTAX has now been rejected by three federal courts. AMTAX's lawsuit against TDC began in Massachusetts federal court where AMTAX sought to void the ROR Agreement, contending it did not comply with Section 42(i)(7) of the Code. AMTAX was forced to proceed in Massachusetts state court after the District Court of Massachusetts found that it lacked subject matter jurisdiction to adjudicate AMTAX's state law claims under the *Grable-Gunn* test, which the First Circuit affirmed because analysis of the rights under the ROR Agreement—a private agreement between two private parties—would have no bearing on the public at large. Conducting its own analysis under the *Grable-Gunn*

7

standard, the District Court here reached the same conclusion. That conclusion, by *three* Courts now, should be affirmed.[2]

### I. The District Court Correctly Dismissed Appellant's Claims for Lack of Subject Matter Jurisdiction.

On February 9, 2023, AMTAX filed its complaint against CohnReznick alleging state law claims for malpractice, breach of fiduciary duty, fraud, and unjust enrichment. (*See generally* Appx9-62 – Compl.) While AMTAX boldly states that each of these claims is "premised on CohnReznick's years-long relationship with AMTAX and the advice it provided to AMTAX," (*see* Appellant's Brief ("AMTAX Brf.") at 5), AMTAX acknowledges that, at all times relevant hereto, CohnReznick was the accountant for the Partnership, and AMTAX is not and was never CohnReznick's client. (Appx21 - Compl. ¶ 49.)

On September 1, 2023, CohnReznick filed its motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction and, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief could be granted. (Appx6.)

---

[2] During the pendency of this appeal, AMTAX filed an action against CohnReznick entitled *AMTAX Holdings 227, LLC v. CohnReznick LLP,* Case No. 2024CV32652 in the District Court, County of Denver, State of Colorado, which action alleges *identical* allegations and causes of action against CohnReznick as are alleged here (adding two more causes of action for good measure). This latest filing by AMTAX during the pendency of this appeal is a tacit acknowledgment that its claims do not give rise to federal question jurisdiction.

On June 4, 2024, the District Court granted CohnReznick's motion to dismiss for lack of subject matter jurisdiction and, as a result, did not reach the parties' arguments on CohnReznick's motion to dismiss the action for failure to state a claim (the "Decision"). (*See generally* Appx541-577.) Specifically, The Honorable Naomi Reice Buchwald analyzed the four elements required for a district court to exercise federal question jurisdiction over state law claims as set forth in the Supreme Court's *Grable-Gunn* test. *Id.*

The District Court found that, while all four elements of the *Grable-Gunn* test must be met, AMTAX was unable to satisfy at least three of those four elements. (Appx563-577 – Decision at 23-37.) The District Court found that AMTAX's claims did not necessarily raise a federal issue that was substantial and would impact other cases beyond this dispute. Further, the District Court found that if it chose to exercise jurisdiction over AMTAX's malpractice claim, it would disrupt the balance between federal and state courts as it would be opening the door to federal court for any malpractice claim involving a federal statute. *Id.*

While AMTAX contends that the District Court overlooked the fact that analysis of the manner in which CohnReznick calculated the ROFR price at issue requires the Court to address Section 42 of the Code, the District Court properly determined that the calculation stems from the private ROR Agreement between the Partnership and TDC. (Appx565 – Decision at 25.)

9

Ultimately, the District Court found that "AMTAX has not sustained its burden of proving by a preponderance of the evidence that its claims depend on federal tax law rather than the parties' interpretation of a sui generis contract." (Appx562 – Decision at 22.)

## II.     Background on the LIHTC Program and Section 42 of the Code

The low-income housing tax credit ("LIHTC") program encourages private investment to finance affordable housing development by providing certain tax credits to the owners of the affordable housing projects.  (Appx15 – Compl. ¶ 26.) The tax credits are earned over a fifteen-year period known as a "compliance period."  *Id.*  As tax credits are only available for "owners" of affordable housing projects, the LIHTC projects are typically structured by forming a limited partnership to own property with a non-profit partner serving as the general partner and an investor serving as a limited partner.  (Appx15 – Compl. ¶ 27.)  The non-profit general partner holds a nominal equity interest in the partnership and is responsible for running the project whereas the investor limited partner typically holds a substantial portion of the equity interest in the partnership.  (Appx15-16 – Compl. ¶ 28.)

At the end of the 15-year compliance period, most investor limited partners seek to leave the project as the investor's previously actualized tax benefits are no longer subject to recapture.  (Appx69 (internal citation omitted)).  The limited

10

partner can exit the partnership by selling its interest in the partnership to the nonprofit general partner. (*Id.*) Alternatively, Section 42(i)(7) of the Code authorizes owners of LIHTC properties to grant eligible stakeholders a ROFR that would allow the stakeholder to purchase the property after the compliance period. (Appx16 - Compl. ¶ 32.) The ROFR holder is typically an affiliate of the non-profit general partner. (*Id.*)

While Section 42(i)(7) authorizes a LIHTC partnership to grant a ROFR, the details of the ROFR are set forth in a contract between the Partnership and the ROFR holder. (Appx18 - Compl. ¶ 37.)

### III.    The Structure of the Partnership

The Partnership follows the general pattern described above for LIHTC partnerships. The Partnership consists of the following: (a) Tenants' Development II Corporation, the General Partner and managing partner of the Partnership who holds a 0.009% interest in the Partnership; (b) AMTAX, the investor/limited partner in the Partnership, who holds a 99.99% interest in the Partnership; and (c) Tax Credit Holdings III, LLC, a special limited partner, who holds a 0.001% interest in the Partnership. (Appx12-13 - Compl. ¶¶ 10, 13 & 14.)

TDC is an affiliate of the General Partner and is not a partner in the Partnership. (Appx13 - Compl. ¶ 15.) TDC made various unsecured loans to the

11

Partnership totaling approximately $25 million ("Non-Recourse Debt"). (Appx14-13 - Compl. ¶ 23.)

Pursuant to the ROR Agreement between the Partnership and TDC, TDC also holds a ROFR to purchase the Property from the Partnership. (*See generally* Appx93-110 – ROR Agreement.) The ROR Agreement provides that "Owner [the Partnership] grants to [TDC] a continuing right of refusal (the "Right of Refusal") to purchase the Property in the event Owner proposes to sell, transfer, assign or ground lease all or substantially all of Owner's interest therein." (Appx93 - ROR Agreement, ¶ 2(a).) The ROR Agreement goes on to explicitly spell out the ROFR price. The ROR Agreement states as follows:

> . . . the purchase price shall be the lesser of . . .[1] the price stated in the Disposition Notice [which is a notice provided by the Owner to TDC spelling out the offer it received for the Property], or [2] the sum of the principal amount of outstanding indebtedness secured by the Property (other than indebtedness incurred within the 5-year period ending on the date of any sale to [TDC]) and all federal, state and local taxes attributable to the sale.

(Appx94 – ROR Agreement, ¶ 2(b)(ii).)

Non-party, Alden Torch Financial LLC ("Alden Torch") is an investment management company that manages LIHTC investments, including AMTAX's interest in the Partnership. (Appx12 – Compl. ¶ 11.) In the industry, it has been asserted that Alden Torch is an "aggregator". "The Washington State Housing Finance Commission in a report called out so-called 'aggregator' investment firms

– those amassing tax-credit portfolios – saying they 'often use burdensome tactics that take advantage of legal ambiguities, resource disparities, and economies of scale to overwhelm their nonprofit counterparties.'" *See, e.g., Investors Mine for Profits in Affordable Housing, Leaving Thousands of Tenants at Risk* (April 29, 2021), available at wbur.org/news/2021/04/29/investors-low-income-housing-boston-sound-end. Aggregators receive tax benefits upon their exit from the partnership and often seek to undermine the exercise of a LIHTC right of first refusal to extract additional money from the non-profit. *Id.*

At all times, as admitted by AMTAX, CohnReznick served as the accountants for the Partnership and not AMTAX. (Appx21 – Compl. ¶ 49 ("As it relates to the Partnership, CohnReznick has served as the independent auditor and tax preparer since AMTAX entered the Partnership in 2003.").)

### IV. CohnReznick Did Not Consistently Perform the ROFR Calculation in a Manner Beneficial to AMTAX and Then Enter into a "Secret Agreement" with the Partnership to Perform the Calculation to Harm AMTAX

Desperate to obtain the benefit of an exit tax distribution from the ROFR calculation, AMTAX alleges that for years, CohnReznick calculated the minimum gain upon a sale of the Property by taking into account AMTAX negative capital account and then, one day, purportedly did a "bait and switch" and calculated the ROFR price contrary to its prior calculations. (Appx26-31 – Compl. ¶¶ 69-88.)

AMTAX's argument is belied by the very documents attached to its Complaint, which make clear that (i) CohnReznick first conducted exit tax calculations to determine the price the General Partner is required to pay AMTAX upon a *sale of AMTAX's limited partnership interest* in the Partnership; and (ii) thereafter, CohnReznick performed a *different* calculation of the ROFR price under the ROR Agreement to determine the price TDC would pay upon *a sale of the Property*. (Appx53-62 – Compl., Ex. 3.)

AMTAX admits that it received the "exit tax" calculations with an offer letter from the General Partner, which states as follows:

> ***Please accept this letter as an offer (the "Offer") by Tenants' Development II Corporation, Managing General Partner of Tenants' Development II, Limited Partnership, for an early purchase of the Partnership Interests in the Partnership held by the Investor Limited Partner, Amtax Holdings 227, LLC and the Special Limited Partner, Protech 2003-B LLC.*** For ease of reference, capitalized terms in this letter have the same meaning as the definitions in the Agreement of Limited Partnership.

> The Managing General Partner proposes to assign the Option under section 7.4(J) of the Agreement to Tenants' Development Corporation, a Massachusetts charitable organization ("TDC"), at which time TDC will purchase the Investor Limited Partner Interest. As a purchase price, TDC offers to acquire the Investor Limited Partner Interest for an amount equal to the Exit Tax Distribution, calculated as of June 30, 2017. The accounting firm of CohnReznick prepared a calculation of the Exit Tax Distribution as of June 30, 2017, an amount equal to $7,737,812, representing the anticipated tax liability incurred in the event of a sale of the Project, plus the amount of any tax liability attributable to the Exit Tax Distribution. The accountants' calculation is shown on the enclosed schedule. The Managing General Partner also proposes to acquire the interest of the

14

Special Limited Partner for an amount equal to its initial Capital Contribution, $107.

(Appx44 – Compl., Ex. 1 (emphasis added).) Thus, AMTAX's own Complaint clarifies that the "exit tax" calculations involve *a sale of the partnership interest* and not *the sale of the Property* under the ROFR.

The significant difference between the "exit tax" calculations and the ROFR calculation is that the former considers AMTAX's negative capital account and the Nonrecourse Debt (i.e., unsecured debt) of the Partnership and the latter does not. AMTAX goes so far as to argue that by filing tax returns for the Partnership, CohnReznick "confirmed annually—to AMTAX and to the Internal Revenue Service ("IRS")—that the Nonrecourse Debt generated sufficient Minimum Gain (i.e., that AMTAX would be allocated sufficient gain upon sale of the Property in increase AMTAX's negative capital account to zero." (Appx21 – Compl. ¶ 50.)

Unfortunately for AMTAX, the ROFR calculation is not the same calculation performed by CohnReznick to consider a sale of AMTAX's *limited partnership interest in the Partnership*. This is because TDC and the Partnership contractually agreed that the ROFR price should be calculated differently. The ROR Agreement specifically provides that the ROFR price considers "***the sum of the principal amount of outstanding indebtedness secured by the Property*** (other than indebtedness incurred within the 5-year period ending on the date of any sale to [TDC]) and all federal, state and local taxes attributable to the sale." (Appx94 –

15

ROR Agreement, ¶ 2(b)(ii) (emphasis added).)  The ROR Agreement limits the calculation to secured debt and does not provide for consideration of the Nonrecourse Debt.  (*Id.*) If AMTAX wanted the Nonrecourse Debt considered as part of a ROFR calculation and was unsatisfied with the ROR Agreement, it could have elected not to invest in the Partnership or required a modification to the ROR Agreement prior to making an investment, which it did not do.

Further, AMTAX only points to the fact that CohnReznick submitted tax returns to the IRS showing that AMTAX had a negative capital account. (Appx21 – Compl. ¶ 50.)  AMTAX has not alleged (nor can it allege) that those tax returns contained a calculation of the ROFR price. Accordingly, there was no "annual confirmation" by CohnReznick that AMTAX would receive an exit tax distribution upon TDC's exercise of the ROFR.

The plainly evident difficulty of AMTAX's position is only highlighted if one considers the documents referenced in AMTAX's Complaint.  AMTAX alleges that CohnReznick entered into a "secret agreement" with the partnership to *exclude* AMTAX's exit taxes when calculating the ROFR.  (Appx10-11 - Compl. ¶ 6.) This "secret agreement" is a plain vanilla Engagement Letter between CohnReznick and the Partnership whereby CohnReznick agreed to "calculate the right of first refusal price."  (Appx112-118.)  The engagement letter merely provides that CohnReznick shall calculate the ROFR after reviewing the ROR Agreement and the Partnership's

16

financials. (Appx112.) Although AMTAX asserts that the 2020 Engagement Letter was a "secret", AMTAX has not (and cannot) allege that CohnReznick provided it with prior engagement letters identifying the Partnership as CohnReznick's client, nor does it explain why CohnReznick would provide AMTAX a copy of its engagement letter when AMTAX admits that CohnReznick was the accountant for the Partnership

AMTAX goes on to argue that CohnReznick has purportedly admitted that the "exit tax" calculation is the same calculation as the ROFR calculation. (Appx27 – Compl. ¶ 74.) However, after AMTAX (through Alden Torch) demanded that CohnReznick redo its ROFR price calculation to make it consistent with its prior exit tax calculations (which, again, are two different calculations used in two different situations), CohnReznick responded to such demand reconciling and explaining the difference between the "exit tax" calculations and the ROFR price. (Appx124-129 & Appx34 - Compl. ¶¶ 104-107.) CohnReznick responded as follows:

> We are in receipt of your letter dated October 21, 2022. Unfortunately the calculations that you inquire were prepared for another client. Just as [CR] would do for AMTAX, we cannot discuss client confidential information. That said, however, the "fourth calculation" that you reference is a sale of the property at the minimum purchase price as defined in Internal Revenue Code Section 42(i)(7), it is not an exit tax calculation. More specifically, it is not an exit tax calculation given the unsecured debt situation that exists here. We are unable to comment further without express permission from the [Partnership].

(Appx131 & Appx35 – Compl. ¶ 109.)

Although there is ample evidence in the record establishing that the "exit tax" calculations and ROFR calculations are different, AMTAX simply ignores the difference between the calculations as it does not serve its own economic interests.

### V. TDC's Exercise of the ROFR and the ROFR Calculation

In accordance with the ROR Agreement, in February of 2020, CohnReznick calculated the ROFR price to be $17,108,380. (Appx32 – Compl. ¶ 94.) On February 7, 2020, CohnReznick sent the ROFR calculation to its client, the Partnership. (Appx30 – Compl. ¶ 85.) On February 10, 2020, the Partnership sent a "Disposition Notice" to TDC informing TDC that it had thirty days to purchase the Property for the sum of $17,108,380. (Appx32 – Compl. ¶ 94.) On February 11, 2020, TDC sent a Purchase Notice to the Partnership to exercise the right to purchase the Property for $17,108,380. (Appx33 – Compl. ¶ 96.) AMTAX notified the General Partner that it objected to (i) the sale of the Property given it was without its consent and (ii) the price calculated by CohnReznick. (Appx33 – Compl. ¶ 98.) Thereafter, the General Partner and TDC filed the MA Action as described further below. (Appx33 – Compl. ¶ 99.)

## VI. The Related Massachusetts Actions

Prior to commencing this action before the District Court, Appellant was a party to two separate federal cases filed in the District of Massachusetts relating to the same ROFR calculation performed by CohnReznick at issue here.

On May 12, 2020, TDC and the General Partner filed an action against AMTAX in the District of Massachusetts, asserting diversity jurisdiction and seeking, among other things, a declaratory judgment that the right of first refusal had been validly triggered and exercised at the price calculated by CohnReznick in accordance with the ROR Agreement. *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC*, No. 20 Civ. 10902 (LTS) (D. Mass. May 12, 2020). (Appx550 – Decision at 10.)

On May 12, 2020, AMTAX also filed a complaint in the District of Massachusetts against TDC and the General Partner, seeking a declaration that the ROR Agreement did not comply with Section 42(i)(7) such that the ROR Agreement should be voided and that TDC's exercise of the ROFR right was invalid. *See AMTAX Holdings 227, LLC v. Tenants' Dev. Corp.*, No. 20 Civ. 10911 (D. Mass. May 12, 2020). (Appx550-551 – Decision at 10-11.) AMTAX argued that the District Court had subject matter jurisdiction over the dispute because the allegations concerned the meaning of the term "right of 1st refusal" in Section 42 of the Code

and required the court to resolve whether the ROR Agreement violated Section 42 of the Code. (Appx551 – Decision at 11.)

On December 23, 2020, the District Court dismissed both federal actions for lack of subject matter jurisdiction. *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC,* No. 20 Civ. 10902 (LTS), NO. 20 Civ. 10911 (LTS), 2020 WL 7646934, at *1 (D. Mass. Dec. 23, 2020), *aff'd on other grounds sub nom. AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.*, 15 F. 4th 551 (1st Cir. 2021). (Appx551 – Decision at 11.) The United States Court of Appeals for the First Circuit affirmed the district court's jurisdictional determination, concluding that, "[r]efined to bare essence, this [was] a dispute over a contract, the [ROR] Agreement," not an important federal question concerning the interpretation of Section 42(i)(7). *AMTAX Holdings 227, LLC*, 15 F.4th at 557. (Appx551-552 – Decision at 11-12.)

The First Circuit found that:

Section 42(i)(7) provides only that "no Federal income tax credit shall fail to be allowable" when a qualifying right of first refusal is in effect. Nothing in the statute either suggests or implies that it voids the noncompliant right of first refusal agreements. The notion that Section 42(i)(7) independently voids noncompliant agreements rather than simply making a party or a project ineligible for certain tax benefits borders on the specious and seems too thin a reed to support federal jurisdiction.

*AMTAX Holdings 227, LLC*, 15 F.4th at 557. (Appx552 – Decision at 12.)

Accordingly, since noncompliance with Section 42 would merely result in the

20

unavailability of the safe harbor, the First Circuit held that Section 42 was not necessarily raised by the parties' dispute. *Id.*

## A. The Massachusetts State Court Litigation

After no federal jurisdiction was found for the two cases commenced by TDC and AMTAX in the District of Massachusetts, the parties proceeded with a lawsuit (the "MA Action") before the Superior Court of Massachusetts (the "MA Court") (*See generally* Appx279-317.)  In the MA Action, TDC and the General Partner sought a declaratory judgment that the ROFR had been validly triggered and exercised at the price correctly calculated by CohnReznick. (Appx303-306; Appx553-554 – Decision at 13-14.)

In turn, AMTAX alleged several counterclaims, contending that the General Partner breached—and that TDC aided and abetted the breach of—its fiduciary duties by, *inter alia*, claiming that the ROFR calculation does not include an exit tax distribution to AMTAX. (Appx554 – Decision at 14.)

After full discovery, the parties filed dueling motions for summary judgment on their claims.  On June 30, 2023, the MA Court entered a decision, which denied, in part, and granted, in part, each of the parties' cross-motions for summary judgment.  (Appx554 – Decision at 14.)  The MA Court found that the contractual language set forth in the ROR Agreement regarding the manner in which one would calculate the ROFR price at issue was, in fact, ambiguous. The MA Court "found no

clear answer after analyzing the **language of the ROR Agreement**, the statutory language, IRS regulations and guidance, and caselaw." (Appx555 – Decision at 15 (emphasis added).)

Although the MA Court ultimately determined that AMTAX had "the better argument", the MA Court stated that:

> [The Partnership's] calculation of the Purchase Price reflected a colorable interpretation of language in the ROR Agreement and Section 42. As noted above, there is no case law or regulatory guidance interpreting the phrase "taxes attributable to such Sale", and the meaning of that phrase is not, at first blush, entirely clear. A legitimate dispute such as this, without more does not amount to a breach of the duty of loyalty and good faith. Second, it is unclear what harm [AMTAX] suffered given that they successfully prevented the sale …

(Appx555 – Decision at 15.)

As a result, the MA Court dismissed AMTAX's breach of fiduciary claim against the General Partner. (*Id.*) The MA Court also found that AMTAX could not establish any damages given the sale of the Property did not proceed (Appx87).

## SUMMARY OF THE ARGUMENT

The District Court here properly found that AMTAX did not sustain its burden of establishing the existence of federal question jurisdiction because AMTAX's claims do not fall within the small category of cases where a federal court should exercise jurisdiction over state law claims under the *Grable-Gunn* test. As an initial matter, the District Court recognized that the District Court of Massachusetts and the First Circuit considered whether the very ROFR calculation at issue here raised a federal question under Section 42 of the Code and, after applying the *Grable-Gunn* test, found it had no jurisdiction. The District Court here properly found that the First Circuit's decision is "highly instructive" to its analysis. (Appx562 – Decision at 22.)

Although the District Court found that the First Circuit's decision was compelling, it conducted its own analysis under the *Grable-Gunn* test. (*Id.*) As demonstrated below, AMTAX has not and cannot show that the lower court's factual findings constitute clear error nor can it establish that the court misinterpreted the law. As recognized by the District Court, AMTAX had the burden to establish that all four elements of the *Grable-Gunn* test were satisfied and that it failed to satisfy elements one, three and four. Given the District Court's findings are supported by the record before it, it is evident that the District Court's determination of lack of federal question jurisdiction was not clear error.

23

Applying the *Grable-Gunn* test, as to the first element, the District Court found that AMTAX's right to relief is not dependent on the resolution of a federal question. (Appx567 – Decision at 27.) Although AMTAX argued that in determining whether CohnReznick properly calculated the ROFR price, the District Court would be required to interpret Section 42(i)(7) of the Code, the District Court found that ". . . it is clear from the document attached to AMTAX's complaint that the price, was in fact, calculated based on the language contained in the ROR Agreement." (Appx565 – Decision, p. 25 (citing Appx54-55 & Appx93-94 - ROR Agreement at 1-2).)

The crux of AMTAX's appeal is that the District Court erred by finding that the state law claims did not necessarily raise a substantial issue of federal law because the District Court misconstrued the allegations in AMTAX's Complaint. AMTAX erroneously argues that the District Court relied *solely* on an email from counsel for TDC (attached to AMTAX's complaint), which requested that CohnReznick perform the ROFR calculation and cited to the language of the ROR Agreement, to find that CohnReznick's calculation was premised on the contract and not Section 42 of the Code. AMTAX Brf. at 28. AMTAX conveniently fails to recognize that the District Court did not simply rely on an email to determine how the calculation was performed, but also the *actual* ROR Agreement. (Appx565 – Decision at 25 (citing Appx54-55 & Appx93-94 - ROR Agreement at 1-2) (District

24

Court states that it relied on email attached to Complaint and the "ROR Agreement at 1-2").)

Further, absent the ROR Agreement, which granted TDC a right of first of refusal to acquire the Property and set forth the purchase price, there was no calculation for CohnReznick to perform. Thus, the issue of whether CohnReznick properly calculated the ROFR requires interpretation of the contract.

CohnReznick did not concede that the ROFR calculation was based *solely* on an interpretation of Section 42(i)(7) of the Code and, as demonstrated below, AMTAX's reliance on a correspondence from Appellee for such proposition is unavailing as such correspondence only bolsters the conclusion that the calculation is a fact sensitive inquiry particular to the parties at issue and the ROR Agreement negotiated among them.

Beyond the first element, the District Court also correctly found that the third and fourth elements of the *Grable-Gunn* test were not satisfied as the federal issue was not substantial and the exercise of jurisdiction would disrupt the federal-state balance.[3] Each of these failures *alone* would mandate dismissal of the action because

---

[3] The second factor of the *Grable-Gunn* test requires the District Court to consider whether the federal issue posed by the plaintiff is actually disputed. The District Court stated that the parties disputed the interpretation of the Code. (Appx567 – Decision at 27.) Nonetheless, because the other three factors were not satisfied, it lacked jurisdiction. (Appx567, 573 & 576 – Decision at 27, 33, 36.)

AMTAX must establish the existence of all four elements of the test in order to maintain federal question jurisdiction.

As to the third element, the District Court found that even if the claims required interpretation of the Code, AMTAX did not establish that ". . . this case would implicate broad consequences to the federal system or the nation as a whole . . ." (Appx571 – Decision at 31 (internal citations omitted).) The District Court also correctly held that AMTAX's reliance on the *Riseboro Community Inc. v. SunAmerica Housing Fund No. 682,* 401 F. Supp.3d 367 (E.D.N.Y. 2019) is misplaced. As the District Court noted, in *Riseboro,* the Court found that the assessment was not based on specific language in the parties' contract so it would have substantial applicability to many other LITHC agreements. (Appx572 – Decision at 32.) Here, the District Court properly found that AMTAX has not shown the far-reaching applicability of the District Court's resolution of its claims.

Finally, the District Court found that allowing AMTAX to proceed with its state law malpractice and related claims in Federal Court would open the floodgates to filing malpractice claims in Federal Court. (Appx573-576 – Decision at 33-36.)

The District Court properly determined that AMTAX's claims do not satisfy all elements of the *Grable-Gunn* test and AMTAX has not otherwise shown why the exercise of subject matter jurisdiction is appropriate in this case. Therefore, this Court's affirmance of the District Court's Decision is proper.

# ARGUMENT

## I.   STANDARD OF REVIEW

In reviewing a district court's dismissal for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), this Court reviews "factual findings for clear error and legal conclusions de novo." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (internal quotation marks and citation omitted); *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022) (citing *Aurecchione v. Schoolman Transp. Sys.*, 426 F.3d 635, 638 (2d Cir. 2005)).  "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial," i.e., based solely on the allegations of the complaint and exhibits attached to it, "or fact-based," i.e., based on evidence beyond the pleadings. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

As demonstrated below, the District Court properly held that it lacked subject matter of jurisdiction over Appellant's claims and its Decision should be affirmed.

## II.   THE DISTRICT COURT CORRECTLY APPLIED THE *GRABLE-GUNN* TEST TO FIND SUBJECT MATTER JURISDICTION DOES NOT EXIST IN THIS CASE

A federal court can exercise jurisdiction under 28 U.S.C. § 1331 in two ways. *Gunn v. Minton*, 568 U.S. 251, 257 (2013).  Typically, federal question jurisdiction exists "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, even when there are only state law causes of action alleged in the complaint, there is a "special and small category of cases" in which federal

27

jurisdiction applies to state law claims, but this category is "slim". *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *Rivera-Zayas v. Our Lady of Consolation Geriatric Care Ctr.,* No. 21-2164-CV, 2023 WL 2926286, at *3 (2d Cir. Apr. 13, 2023).

"[T]he Supreme Court has been sparing in recognizing state law claims fitting this criterion." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014). In these cases, there may be "arising under" jurisdiction if resolution of a state law claim only if *all* four elements of the *Grable-Gunn* test can be satisfied. *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

To decide if a state law claim satisfies the *Grable-Gunn* test, courts examine whether the federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id*. This is not a balancing test—if any one of these four prongs is absent, there is no federal jurisdiction.

As set forth below, the District Court correctly found that the First Circuit's analysis under *Grable-Gunn* was instructive and properly conducted its own analysis.

### A. The District Court Properly Found that the First Circuit's Application of the *Grable-Gunn* Test is Instructive.

The District Court properly found that the First Circuit's application of the *Grable-Gunn* test, when tasked with determining whether the same ROR Agreement

gave rise to federal jurisdiction, is instructive in this case (Appx562 – Decision at 22.)

At issue in the related Massachusetts federal actions was AMTAX's claims that the ROR Agreement did not comply with Section 42(i)(7) of the Code such that the ROR Agreement was void and that TDC's exercise of the ROFR right was invalid. *See AMTAX Holdings 227, LLC v. Tenants' Dev. Corp.*, No. 20 Civ. 10911 (D. Mass. May 12, 2020). The Massachusetts District Court found that there was no federal question jurisdiction. *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC,* No. 20 Civ. 10902 (LTS), NO. 20 Civ. 10911 (LTS), 2020 WL 7646934, at *1 (D. Mass. Dec. 23, 2020), *aff'd on other grounds sub nom. AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.*, 15 F. 4th 551 (1st Cir. 2021).

The First Circuit affirmed, finding that the *Grable-Gunn* test could not be satisfied. First, the First Circuit found that there was no federal issue necessarily raised because "the notion that Section 42(i)(7) independently voids noncompliant agreements rather than simply making a party or project ineligible for certain tax benefits borders on the specious and seems too thin a reed to support federal jurisdiction." *AMTAX Holdings 227, LLC*, 15 F.4th at 558 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10, (2006)).

The First Circuit went on to find that the posed federal issue was not substantial (in satisfaction of the third prong) and reasoned that ". . . the 'common

thread that runs through' state-law claims that implicate substantial federal issues is the presence of 'some appreciable measure of risk to the federal sovereign' . . ." *AMTAX Holdings 227, LLC*, 15 F.4th at 558. Since AMTAX's complaint did "not challenge – nor even implicate – concrete federal activity (such as an attempt by the IRS to recapture the Partnership's tax credits)[,]" the court found that the case did not jeopardize federal sovereignty. *Id.*

The First Circuit emphasized that AMTAX's claims lacked substantiality because it was "questionable whether the outcome of the litigation [would] have ramifications for other cases," as "right of first refusal agreements are sui generis," for which "[t]here is no standardized language …, nor is there any indication that developers or investors customarily use a one-size-fits-all prototype," nor is there a basis to conclude "that a large number of LIHTC would be affected by the federal-law issue here." *Id.* The First Circuit also found that exercising jurisdiction would minimally implicate the congressionally approved balance of federal and state responsibilities. *Id.* at 559 n.4. Finally, the First Circuit recognized that "the federal government already 'delegates' LIHTC-related compliance matters 'to state agencies as a matter of course,' … and it is not clear how a state court could destabilize the program by ruling on the meaning of section 42(i)(7)." *Id.* at 558.

In a feeble effort to avoid the fact that two federal courts have held that the same ROR Agreement does not give rise to a federal question that warrants the

exercise of federal jurisdiction, AMTAX argues that the Massachusetts actions deal with contract interpretation and the within case addresses compliance with Section 42 of the Code.  AMTAX Brf. at 19.

The District Court properly found that notwithstanding the differences in the allegations raised by AMTAX in the District of Massachusetts and here, the First Circuit decision is instructive because ". . . as in the Federal Massachusetts Action, AMTAX has not sustained its burden of proving by a preponderance of the evidence that its claims depend on federal tax law rather than the parties' interpretation of a sui generis contract."  (Appx562 – Decision at 22.)

### B. The District Court Properly Applied the *Grable-Gunn* Test to Find No Federal Jurisdiction.

Although the District Court found the *Grable-Gunn* analysis conducted by the First Circuit as instructive, it, nonetheless, conducted an independent analysis of the test and, as demonstrated below, found that it lacked subject matter jurisdiction over Appellant's claims. (*Id*.)  The District Court found *three independent bases* to determine a lack of subject matter jurisdiction as AMTAX failed to satisfy three of the four *Grable-Gunn* elements and all elements must be satisfied for federal jurisdiction to be exercised over state law claims. *Gunn*, 568 U.S. at 258.

31

**1. The District Court Properly Found that the First Element of the *Grable-Gunn* Test is Not Satisfied.**

The first element of the *Grable-Gunn* test is satisfied "where the plaintiff's right to relief necessarily depends on resolution of a question of federal law," and "federal jurisdiction exists if a court **must apply** federal law to the plaintiff's claim in order to decide the case." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021) (emphasis added). "[A] mere speculative possibility that a federal question may arise at some point in the proceeding" is insufficient to establish federal jurisdiction." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983).

As set forth below, the District Court correctly found that AMTAX's claims against CohnReznick arise under the ROR Agreement and, thus, no federal question is implicated. CohnReznick has also set forth an additional independent ground for this Court to affirm the District Court's decision.

**i. A Federal Issue is Not Necessarily Raised by AMTAX's Claims Against CohnReznick.**

The District Court found that none of the claims raised by AMTAX's complaint necessarily raise a federal issue. (Appx567 – Decision at 27.) AMTAX maintains that each of the four state-law causes of action necessarily raise a federal issue because they all concern whether CohnReznick's calculation of the ROFR price set forth in the ROR Agreement was in accordance with the statutory

32

requirements of Section 42(i)(7). *See* AMTAX Brf. at 24-26. The District Court correctly rejected this theory as it found "clear from the documents attached to AMTAX's complaint that the price was, in fact, calculated based on the language contained in the ROR Agreement." (Appx565 – Decision at 25.)

AMTAX claims that the District Court erred by finding that analysis of whether CohnReznick properly calculated the ROFR price is based on an interpretation of the ROR Agreement and not Section 42 of the Code. *See* AMTAX Brf. at 19, 34. Contrary to AMTAX's argument, the District Court found that to determine AMTAX's claims, the Court needs to consider the specific ROFR calculation set forth in the ROR Agreement. That such calculation mirrors the language in Section 42 of the Code is of no moment because AMTAX's claims, in the first instance, depend on the existence of the ROR Agreement. Absent the ROR Agreement, there is no right of first refusal necessitating a calculation by CohnReznick.

Nor can AMTAX establish that its claims arise under Section 42(i)(7) of the Code as this statutory provision does not create a private cause of action for AMTAX. Section 42(i)(7) of the Code provides a safe harbor, which prevents the IRS from denying a LIHTC partnership certain tax credits provided that the ROFR granted under the partnership's contract complies with the statute. *See SunAmerica Housing Fund 1500 v. Pathway of Pontiac, Inc*., 33 F.4th 872, 875 (6th Cir. 2022).

Because Section 42(i)(7) does not create a claim, defense, or an enforceable right at issue in this case and the claim arises under the ROR Agreement, there is no federal issue necessarily raised by AMTAX. *See 7 W. 21 LI LLC v. Mosseri*, 2022 WL 16722105 at *5 (S.D.N.Y. Nov. 4, 2022) ("This allegation does not establish that the Petition was brought under a cause of action created by federal law. It alleges only that section 42 of the Internal Revenue Code governs the building containing the Premises, not that any provision in section 42 entitles Petitioner to the relief it seeks in the Petition.").

Furthermore, equally unavailing are AMTAX's arguments that (i) the District Court placed "undue weight" on an email from TDC to CohnReznick that quoted the language of the ROR Agreement setting forth the ROFR calculation; and (ii) the District Court overlooked the fact that CohnReznick purportedly conceded that the interpretation is governed by Section 42 of the Code. *See* AMTAX Brf. at 28-29.

In finding that CohnReznick looked to the ROR Agreement to calculate the ROFR price, the District Court did not attach undue weight to the email from TDC's counsel to CohnReznick describing the ROFR calculation set forth in the ROR Agreement. The District Court noted that the *actual* ROR Agreement set forth the specific calculation to be followed. Because the ROR Agreement sets forth the calculation, the District Court found ". . . AMTAX's argument that its claim rest on the interpretation of Section 42(i) (7) of the Code, rather than the ROR Agreement,

is too tenuous to support federal jurisdiction." (Appx565 – Decision at 25 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 550, 513, n.10 (2006) ("A claim invoking federal-question jurisdiction . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction'").) Thus, there was ample evidence in the record to support the District Court's findings, which are not clear error.

The District Court was not required to hold an evidentiary hearing on this issue as AMTAX now contends, and a hearing was not even requested below.[4] Neither of the two cases cited by AMTAX support its request for an evidentiary hearing. *See Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008); *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). In fact, the cases confirm that the District Court need not conduct an evidentiary hearing when the Court assumes all facts alleged in the Complaint as true, which the District Court did here. *Id.*

Indeed, the District Court did not improperly assume the role of factfinder but correctly considered materials submitted with AMTAX's complaint, which are properly considered part of the record in a motion to dismiss. *See Carter*, 822 F.3d at 56.

---

[4] Even though AMTAX was permitted to submit a sur-reply in the lower action, it still did not request an evidential hearing on this issue.

Putting aside that the District Court was able to consider all assertions in and attachments to AMTAX's complaint below, significantly, AMTAX does even not identify on appeal the specific allegation(s) in its own Complaint that the District Court incorrectly considered.

Moreover, CohnReznick never conceded that the ROFR price calculation could be conducted by simply interpreting Section 42(i)(7) of the Code, in any letter or otherwise. *See* AMTAX Brf. at 28-29. The letter referenced by AMTAX, where it claims that CohnReznick makes this purported "concession," simply states that the calculation at issue was for a sale of the Property and not an exit tax calculation as AMTAX incorrectly contends. Although CohnReznick noted that the minimum purchase price is defined in Section 42(i)(7) of the Code, it states that the calculation is a very fact sensitive inquiry. (Appx131 (stating that the calculation is impacted by specific unsecured debt of the Partnership).) Nor does this statement mean that the contract between the parties – the ROR Agreement at issue – is not relevant to the calculation.

Further, the District Court properly found that this case is completely distinguishable from the *Riseboro* and *Jacobson* cases. The *Riseboro* decision is inapplicable to this case because in *Riseboro* the Court did not have to analyze the specific language in the contract but was called upon to address an entirely different issue, namely, whether a right of first refusal has the same meaning under Section

42(i)(7) of the Code and New York common law. *Riseboro,* 401 F. Supp.3d at 373 ("In essence, Plaintiff's claims will require the Court to resolve the parties' dispute over … whether 26 U.S.C. § 42(i)(7) envisions an ROFR that differs from a common law ROFR.") (Appx572 – Decision at 32.)

As the District Court determined, AMTAX's attempt to analogize this case to *Jacobson* is similarly unavailing. (Appx566 – Decision at 26.) In *Jacobson*, liability "was predicated explicitly on the interpretation of certain definitions within the Code and federal regulations." (*Id.*) Here, by contrast, the ROR Agreement, and not Section 42(i)(7), is determinative on the question of liability, and a court would first be required to make highly fact-specific analysis into CohnReznick's acts and whether it owed any duty to AMTAX when calculating the ROFR price.

Accordingly, the District Court properly found that AMTAX's claims do not necessarily raise a federal issue.

> **ii.    This Court Should Affirm the District Court's Dismissal Order For the Additional Reason that AMTAX's Claims Can Be Determined Solely by Looking to State Law.**

While the District Court adopted "slightly different reasoning" from CohnReznick to find a federal issue was not necessarily raised, CohnReznick's arguments raised below set forth yet another independent basis for this Court to affirm the District Court's ruling.

On appeal, the Second Circuit is ". . . free to affirm a decision on any grounds supported in the record, even if it is not one on which the trial court relied." *See Buday v. New York Yankees P'ship*, 486 F. App'x 894, 896 (2d Cir. 2012) (citing *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 405 (2d Cir.2006) ("[W]e are free to affirm a decision on any grounds supported in the record, even if it is not one on which the trial court relied.")).

As argued by CohnReznick in detail before the District Court, AMTAX's claims do not necessarily raise a federal issue. While AMTAX contends that for the Court to determine its claims for breach of fiduciary, professional negligence, fraud and unjust enrichment, the Court must consider CohnReznick's interpretation of Section 42 of the Code, each of the claims can be decided under state law alone. Here, a court can find (and should find) that the breach of fiduciary duty and professional negligence claims fail because AMTAX must admit that it was *never* CohnReznick's client and, thus, CohnReznick owed it no duty.[5] A court can easily find that AMTAX's fraud claim fails as CohnReznick made no representation to

---

[5] *See Ultramares Corporation v. Touche*, 255 N.Y. 170 (1931) (New York law bars third-party claims against accountants when the third-party is not in "privity" with the accountant; *Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 464 (2007) (concluding professional malpractice claims against accountant require underlying relationship be one of contract or functional equivalent of privity); *Ossining Union Free School Dist. v Anderson LaRocca Anderson*, 73 N.Y.2d 417, 419 (1989) (stating non-client malpractice claim must be based on "bond … so close as to be the functional equivalent of contractual privity."); *see also Rhode, Titchenal, Bauman & Scripter v. Shattuck*, 619 P.2d 507 (Colo. App. 1980) (an accountant does not owe a fiduciary duty to its client).

AMTAX (a non-client) and CohnReznick never communicated with nor provided work product to AMTAX.[6]  Further, unjust enrichment fails here as the alleged benefit conferred to CohnReznick were the fees it received from the Partnership and not AMTAX and, thus, AMTAX has no standing to even demand a disgorgement of such fees.[7]

Accordingly, the Second Circuit should affirm the District Court's decision as there is no federal issue necessarily raised.

### 2. The District Court's Ruling that the Interpretation of Section 42(i)(7) is "Actually Disputed" is Not Inconsistent with the Remainder of the Court's Analysis.

As to the second *Grable-Gunn* element, ". . . the 'actually disputed' factor of the test is satisfied when the federal issue is 'the only' or 'the central' point in dispute." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016) (quoting *Grable*, 545 U.S. at 315, and *Gunn*, 568 U.S. at 259).

The District Court surmised that the interpretation of Section 42(i)(7) is actually disputed by the parties. Nonetheless, the District Court properly found that

---

[6] *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,* 33 F. Supp. 3d 401, 445-46 (S.D.N.Y. 2014) (to state a claim for fraud, a plaintiff must allege that "defendant made a [false] representation as to a material fact … …"); *see also Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo. App. 2002) (a fraudulent concealment claim requires that plaintiff to establish it is owed a duty).

[7] *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir.2011) (plaintiff must allege that defendant was enriched at plaintiff's expense to succeed on a claim for unjust enrichment); *see also Lewis v. Lewis,* 189 P.3d 1134, 1141 (Colo. 2008) (same).

simply because this prong of the *Grable-Gunn* test was satisfied, subject matter jurisdiction did not exist as the remaining prongs of the test are not satisfied. *See Gunn*, 568 U.S. at 258 (explaining that the *Grable-Gunn* test requires satisfaction of all four prongs).

AMTAX contends that the District Court's decision on the second element is "logically irreconcilable with [the District Court's] holding that the interpretation of Section 42(i)(7) is not necessarily raised by AMTAX's claims". *See* AMTAX Brf. at 31. AMTAX's argument is non-sensical as each prong is analyzed separately. The District Court merely found that the federal issue posed was not necessarily raised by AMTAX's claims and not substantial, but the federal issue was, nonetheless, disputed by the parties.

### 3. The District Court Correctly Found that the Federal Question is Not Substantial.

The District Court correctly held that the federal tax issue raised by Appellant was not "substantial" because "AMTAX failed to 'furnish[] any basis for concluding that a large number of LIHTC transactions would be affected by the federal-law issue here,'" and that AMTAX's claim was not against a federal agency's compliance with a federal statute. (Appx571-572 – Decision at 31-32 (citing *AMTAX Holdings 227, LLC*, 15 F.4th at 558).)

For a federal issue to be substantial, the issue of federal law must be ". . . important not solely to the parties in the immediate case but also to 'the federal

system as a whole.'" *Tantaros*, 12 F.4th at 145 (citing *Gunn,* 568 U.S. at 260); *see also Link Motion Inc. v. DLA Piper LLP (US)*, 103 F.4th 905, 914 (2d Cir. 2024). A substantial federal issue typically exists "only in those exceptional cases that go beyond the application of some federal law raised in connection with state-law claims and instead implicate broad consequences to the federal system or the nation as a whole." *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.,* No. 23-1213, 2024 WL 4096360, at *6 (2d Cir. Sept. 6, 2024) (citing *Gunn*, 568 U.S., at 263-64).

Courts have found that a federal issue satisfies the "substantial" requirement when the federal issue "present[s] a nearly pure issue of law, one that could be settled once and for all and would govern numerous ... other cases." *Empire Healthcare Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006); *see also Tantaros*, 12 F.4th at 145. By contrast, courts have found that a federal issue is not substantial where the determination is "a fact-specific application of the regulations to [the defendant] that does not implicate the validity of the regulations themselves, or have any other broader effect on federal interests." *Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.*, 557 F. App'x 87, 90 (2d Cir. 2014). "Additionally, a substantial federal issue is more likely to be present if it has 'broader significance … for the Federal Government' by, for example, affecting the government's

practices in other cases." *Sunvestment,* 2024 WL 4096360, at *7 (citing *Gunn*, 568 U.S. at 260 and *NASDAQ OMX Grp.*, 770 F.3d at 1024).

AMTAX takes issue with the District Court's decision, contending that the federal question is substantial as it is a pure question of law and has large implications on the LIHTC industry. AMTAX Brf. at 31-34. As demonstrated below, both arguments fail.

### i. The Federal Issue Is Not a "Pure Issue of Law"

This Court should reject AMTAX's assertion that its claims raise a pure issue of federal law relating to the meaning of Section 42(i)(7). AMTAX argues that because the language in the ROR Agreement tracks the safe harbor set forth in Section 42(i)(7) of the Code, resolution of the issue is a "pure issue of law". AMTAX Brf. at 31. As aptly noted by the District Court, AMTAX's argument is unpersuasive as AMTAX's " . . . state-law claims ultimately rest on the interpretation of the ROR Agreement's purchase price provision, not federal tax law [because] . . . right of first refusal agreement are sui generis." (Appx569 – Decision at 29 (citing *AMTAX Holdings 227, LLC*, 15. F.4th at 558).)

Put simply, ROFR agreements between different parties structure ROFR prices differently and, as a result, the outcome of whether CohnReznick properly calculated the ROFR price would only have bearing on those right of first refusal agreements that define the ROFR price in the same way. AMTAX has made no

showing as to the number of ROR contracts that contain ROFR prices that track the language in Section 42(i)(7) of the Code and nor can they as right of first refusal contracts are private agreements.

Further, substantiality is not present as no federal activity is implicated. *See Sunvestment*, 2024 WL 4096360, at *6 (citing *Gunn*, 568 U.S. at 263-64). The IRS is not a party to or otherwise involved in this action. AMTAX alleges that CohnReznick, not the IRS, is assessing or calculating the ROFR calculation at issue and therefore AMTAX merely challenges the actions of CohnReznick, a private party, not the actions of the IRS. As a result, neither the IRS nor any other federal government agency has any interest in, or would be affected by, the outcome of this case. *See Sunvestment*, 2024 WL 4096360, at *8 (citing *Gunn*, 568 U.S. at 260-61).

Equally unavailing is AMTAX's argument that the federal courts must hear this case because 28 U.S.C. § 1340 provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade." *See* AMTAX Brf. at 33. Federal courts invoke 28 U.S.C. § 1340 when the federal government is a party to the case and the outcome of the case would have some binding effect or impact on the federal system. *See e.g., United States v. Mellon,* 719 F. App'x 74, 78 (2d Cir. 2018) (28 U.S.C. § 1340 "confers on federal district courts subject matter jurisdiction over …

IRS summons enforcement actions"). The statute does not serve as an independent basis for the District Court to exercise subject matter jurisdiction and jurisdiction can only be found if the *Grable-Gunn* test is satisfied. *See e.g., Riseboro*, 401 F.Supp.3d at 372 (applying the *Grable-Gunn* test when a federal court determines it has jurisdiction under both 28 U.S.C. § 1331 and 28 U.S.C. § 1340). AMTAX has not shown that it may bypass the requirements of the *Grable-Gunn* test by relying on 28 U.S.C. § 1340 alone as AMTAX has not offered a single case where a federal court exercised subject matter jurisdiction in an action solely pursuant to 28 U.S.C. § 1340.

Because the calculation here turns on the ROR Agreement and does not implicate activity by the IRS, this case is a far cry from the case relied on by AMTAX to argue that the federal question is substantial. *See State ex rel. Am. Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.*, 592 F. Supp. 3d 183, 208 (S.D.N.Y. 2022) (finding substantial question of federal law where claims involved issues of international taxation: "how cross-border income is allocated and thus, what countries may obtain the benefit of tax revenue … concerns a topic for which 'Congress has attempted to place disputes … exclusively in a federal forum.'") (internal citations omitted).

Since the disposition of AMTAX's claims will not affect the federal government's practices in other cases involving different parties, the District Court correctly determined that they are not substantial.

Finally, the District Court properly found that the *Riseboro* decision is distinguishable from the instant case. The District Court properly held as follows: "Riseboro is also readily distinguishable. There, the plaintiff alleged that, in order to determine whether the term "right of 1st refusal" in Section 42(i)(7) differed from its meaning under New York common law, the applicable agreement, "'[could not] be interpreted purely under New York common law, but must be interpreted to be consistent with the statutory of Section 42'". (Appx572 – Decision at 32 (citing *Riseboro*, 401 F. Supp. 3d at 373 (quoting Riseboro's complaint) (emphasis added).) Because that assessment "would not be based on the specific language of the [parties' right of first refusal agreement] but rather on its interpretation of Congress' intent in drafting," the court found that this "purely legal question" was substantial and [would] be applicable to many other LIHTC agreements nationwide." (*Id* (citing *Riseboro*, 401 F. Supp. 3d at 374).)

> **ii.  AMTAX Has Not Established That Resolution of the Federal Question Would Have Far Reaching Implications for the LIHTC Industry.**

Simply because AMTAX says it is so, AMTAX claims that interpretation of how CohnReznick conducted the ROFR calculation will have far reaching implications to the investors in the LIHTC industry. Of course, AMTAX is not able to cite any evidence presented to the District Court to this effect that was purportedly overlooked by the Court. *See* AMTAX Brf. at 31-34. In stark contrast to AMTAX's

argument, the District Court's finding that the federal issue is not substantial is supported by the evidence in the record.

The District Court correctly found that AMTAX did not meet its burden on substantiality, reasoning as follow:

> . . . AMTAX has failed to 'furnish [] any basis for concluding that a large number of LIHTC transactions would be affected by the federal-law issue here," i.e., whether a right of first refusal negotiated between parties involved in the LIHTC program must include exit taxes when calculating the purchase price. AMTAX Holdings 227, LLC, 15 F.4th at 558. In fact, the HUD Report relied on by AMTAX observed that "exit taxes are not a major issue in establishing Year 15 sales prices, " with "[o]nly one syndicator . . nam[ing] recovery of exit tax liability as a goal they seek to achieve for the LP investors."

(Appx571 – Decision, p. 31 (citing U.S. Dep't of Hous. and Urb. Dev., What Happpens to Low-Income Housing Tax Credit Properties at Year 15 and Beyond? 29 (Aug. 2012), https://hudser.gov/portal//publications/pdf/what_happens_lihtc_v2.pdf, at 31.).)

Equally unavailing is AMTAX's argument that the District Court found a lack of substantiality because it failed to appreciate that the ROFR calculation being conducted by CohnReznick mirrored the safe harbor set forth in Section 42 of the Code. AMTAX Brf. at 34. Based on the lack of showing by AMTAX that this would impact the LIHTC industry, the District Court explicitly stated as follows: ***"[E]ven if AMTAX's claim did necessitate an interpretation of Section 42(i)(7)***, this Court is not convinced that this case would implicate broad consequences to the federal

46

system or the nation as a whole, which are required to establish federal question jurisdiction." (Appx571 – Decision at 31 (internal citations omitted) (emphasis added).)

Accordingly, the District Court properly found that the federal question posed by AMTAX is not substantial.

### 4. The Exercise of Jurisdiction Would Interfere With Congress' Judgment Regarding The Division of Labor Between Federal and State Courts

The fourth *Grable-Gunn* requirement requires the Court to consider whether the existence of federal jurisdiction impacts the division of labor between state and federal courts. *Grable*, 545 U.S. at 313-14. In conducting this analysis, the courts consider whether ". . . the exercise of federal-question jurisdiction over a state law claim . . . disturb[s] any congressionally approved balance of state and federal judicial responsibilities, focus [] primarily on the nature of the claim, the traditional forum for such a claim and the volume of cases that would be affected." *New York ex rel. Jacobson v. Wells Fargo National Bank N.A.,* 824 F.3d 308, 316 (2d Cir. 2016).

CohnReznick properly argued below that federal courts have consistently found that state law malpractice claims cannot satisfy the fourth *Grable-Gunn* requirement as it will open the floodgates to state law malpractice claims in Federal Court. *See Dagostine v. Pendleton*, No. 2:22-CV-00220, 2022 WL 16950281, at *7

47

(S.D.W. Va. Nov. 15, 2022) ("Anytime the account-client relationship sours, the disgruntled party could haul the other into federal court—despite only having a state-law claim—simply because the contract tangentially relates to federal law."); S*heridan v. New Vista, L.L.C.*, 406 F. Supp. 2d 789, 794 (W.D. Mich. 2005) ("The potential for shifting the division of labor from state to federal courts is much greater in this case because if federal jurisdiction exists here, any malpractice . . . claim alleging an unreasonable interpretation of federal law, be it tax, securities, ERISA, etc. would invoke federal question jurisdiction."); *Fischer v. Fischer,* No. 20-cv-2173, 2021 WL 1720213, at *7 (N.D. Tex. Apr. 30, 2021) (finding court did not have subject matter jurisdiction as "[a]llowing Plaintiff to litigate this case in federal court would open the federal courts to garden variety malpractice, breach of duty, and similar state law claims based on allegations that the defendant made fraudulent and negligent misrepresentations related to tax law").

Upon reviewing the above law, the District Court correctly found that "it is well-established that state law malpractice claims cannot satisfy this element of the *Grable-Gunn* test, as it would open the floodgates to the filing of malpractice claims in federal court." (Appx574-575 – Decision at 34-35.) The District Court also acknowledged that "the states have a special responsibility for maintaining standards among members of the licensed professions." (Appx575 – Decision at 35 (internal quotations and citations omitted).)

AMTAX contends that the District Court erred as it cited no case law concerning accounting malpractice and it cannot show that the states have no comparable interest in regulating accountants or auditors as they do with attorneys who are members of the bar. *See* AMTAX Brf. at 35. AMTAX's argument plainly overlooks the obvious reality that each state has its own regulatory board charged with overseeing licensure of certified public accountants ("CPAs") and accounting firms, which state regulatory bodies issue the regulations that govern licensed CPAs and licensed accounting firms, and that have the authority to control the requirements and standards of licensed individuals or licensed accounting firms in their respective states. *See e.g., Bell v. New York State Bd. of Regents,* 26 A.D.3d 538, 539 (2006) ("Proceeding pursuant to CPLR Article 78 … to review a determination of respondent which revoked petitioner's license to practice accountancy in New York"); *see also Peel v. Att'y Registration & Disciplinary Comm'n of Illinois,* 496 U.S. 91, 110 S. Ct. 2281, 2294 (1990) (Marshall, J., concurring) ("many States prescribe requirements for, and certify public accountants as, 'Certified Public Accountants.') (internal citations and quotations omitted). Thus, the states equally have an interest in regulating accountants whether they are conventional accountants or specialists.

Relying on *Riseboro,* AMTAX argues that exercising federal jurisdiction will not give rise to additional cases as a "ROFR dispute is a relatively rare occurrence—

so too are accountants specializing in Section 42(i)(7)." [8]  *See* AMTAX Brf. at 36. AMTAX's argument overlooks the fact that if the Court exercises federal jurisdiction over its claim, it opens the door to accounting malpractice claims arising from *any* interpretation of the Code and not simply Section 42 as well as legal malpractice claims where an attorney interpreted *any* federal statute.

AMTAX suggests that the jurisdictional statute 28 U.S.C. § 1340, which is not appropriately applicable to this action (*see* section II.B.3.i, *supra*), suggests that the division of labor between federal and state courts would not be disrupted if the District Court exercises subject matter jurisdiction. *See* AMTAX Brf. at 36. AMTAX has not and cannot establish that Congress' intent in having the District Court decide matters of IRS enforcement was to open the door to state malpractice claims concerning the Code.

Lastly, the District Court's recognition that Congress delegated oversight of compliance with the LIHTC program requirements to state agencies is directly relevant to the analysis and AMTAX has not shown otherwise. (Appx576 – Decision at 36 (citing *AMTAX Holdings 227, LLC*, 15 F.4th at 558).)  Although AMTAX contends that such delegation has no bearing on the analysis under the *Grable-Gunn* test, the fourth factor considers the "balance of state and federal judicial

---

[8] AMTAX's argument contradicts its own claim that resolution of the federal issue will have far reaching implications to the LIHTC industry. *See* AMTAX Brf. at 31.

responsibilities." *New York by James v. Sirius XM Radio Inc.*, No. 24-CV-413 (JSR), 2024 WL 2348206, at *5 (S.D.N.Y. May 23, 2024) (citing *Jacobson*, 824 F.3d at 316). Thus, that Congress already provided the states with responsibility over the LIHTC program certainly indicates that a state court can determine AMTAX's state law malpractice claim.

## CONCLUSION

For the reasons set forth above, the Decision issued by the District Court on June 4, 2024 should be affirmed.

Dated: September 25, 2024

Respectfully submitted,

**NORRIS McLAUGHLIN, P.A.**

*/s/ Melissa A. Peña*
Melissa A. Peña
Benjamin D. Schwartz
7 Times Square, 21st Floor
New York, NY 10036
Tel: (212) 808-0700
Email: mapena@norris-law.com
Email: bschwartz@norris-law.com

**ATTORNEYS FOR DEFENDANT-
APPELLEE COHNREZNICK LLP**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) and Local Rule 32.1(a)(4) because the brief contains 11,729 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman font using Microsoft Word for Office 365.

Dated: September 25, 2024

Respectfully submitted,

**NORRIS McLAUGHLIN, P.A.**

*/s/ Melissa A. Peña*
Melissa A. Peña
Benjamin D. Schwartz
7 Times Square, 21st Floor
New York, NY 10036
Tel: (212) 808-0700
Email: mapena@norris-law.com
Email: bschwartz@norris-law.com

**ATTORNEYS FOR DEFENDANT-APPELLEE COHNREZNICK LLP**

## CERTIFICATE OF SERVICE

I, Melissa A. Peña, hereby certify that on September 25, 2024, I caused to be electronically filed the foregoing Brief with the Court using the ACMS system. I further certify that all participants in the case are registered ACMS users and will receive service through the ACMS system.

Dated: September 25, 2024

*/s/ Melissa A. Peña*
Melissa A. Peña